F. BOWDEN COMPANY, INCORPORATED, PLAINTIFF, v. CENTER AMUSEMENT COMPANY, INCORPORATED, DE-FENDANT.

Submitted November 6, 1924—Decided May 5, 1925.

Mechanics' Lien—Stop-notice For Supplies to Contractor—Somewhat Complicated Facts Reviewed and Held, That Judgment For Plaintiff For Full Amount of Claim Should Not be Interfered With, Not Being Against Weight of Evidence Nor Excessive, Since if Plaintiff's Witnesses are to be Believed There Were Sufficient Funds in the Hands of Owner to Which Contractor Was Entitled.

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, ·and Justices PARKER and KATZENBACH.

For the plaintiff, *Roger Hinds* (*Edward F. Clark,* of counsel).

For the defendant, *David Bobker* and *Thomas L. Parsonnel* (*William K. Flanagan,* of counsel).

PER CURIAM.

This case is before us on a defendant's rule to show cause. The action was tried at the Essex County Circuit. It was instituted by F. Bowden Company, Incorporated, against the Center Amusement Company, Incorporated, to recover $9,-270.38, with interest. The plaintiff claimed this sum for materials, principally sand and cement, which it had sold to Jardin & Company, contractors, for the erection of a theatre building in the city of Newark for the defendant. On July 25th, 1921, Jardin & Company entered into a written agreement with the defendant for the erection of said theatre. The contract price was $132,500. The contract provided with reference to payments as follows: "As the work progresses, and on or before the 10th and 25th of each month, owner will pay contractor eighty per cent. of the value of labor and materials furnished to the last day of the preceding period. Said payments are to be made upon certificates issued by the architect, as the work progresses."

The plaintiff sold to Jardin & Company materials to the amount mentioned. These materials went into the building. Jardin & Company continued work upon the building until after December 10th, 1921. Up to November 21st, 1921, there had been seven architect's certificates issued, aggregating $83,000. The next payment was due on or before December 10th, 1921. The plaintiff had not been paid for its materials. It demanded payment of Jardin & Company. When not paid the plaintiff served a stop-notice under the Mechanics' Lien act upon the defendant. This notice was served on December 8th, 1921. It was the basis of the present suit. The plaintiff contended, in the first place, that the work upon the building had progressed between November 21st, 1921 (the date of the last architect's certificate), and December 10th, 1921, as rapidly as it had prior to November 21st, 1921. This progress of the work entitled Jardin & Company to an architect's certificate for at least $15,000, on December 10th, 1921. The plaintiff further contended that an architect's certificate to the amount of $15,000 had been issued and delivered on or about December 10th, 1921,

to Jardin & Company, and that, subsequently, this certificate was changed to one for $2,500, dated December 5th, 1921. On December 17th, 1921, the Center Amusement Company took over the building in an unfinished state, and, subsequently, completed it. At the trial the defendant also contended, in addition to the defense, that there were no moneys due Jardin & Company at the time of the service of the plaintiff's stop-notice; that there was a prior stop-notice served upon it by the Franklin Lumber Company for $5,000, and that it had given to the Franklin Lumber Company its note for $5,000. The defendant further contended that there were labor claims amounting to $6,236.35, which it paid, which the Mechanics' Lien act gave preference to over the claim of the plaintiff. The evidence produced by the plaintiff at the trial was to the effect, as heretofore stated, that the work between November 21st and December 10th, 1921, a period of nineteen days, had progressed as rapidly as prior to November 21st, 1921; that Jardin & Company had, on November 21st, 1921, received an architect's certificate for $12,000, and on November 3d, 1921, a certificate for $12,000, and on October 24th, 1921, a certificate for $12,000. The plaintiff contended, not only that there had been a certificate for $15,000 delivered to Jardin & Company on or about December 10th, but that if this certificate had not been delivered the architect, who was the agent of the owner, had unreasonably persisted for the benefit of the defendant in withholding the certificate, which made the defendant liable. There were many suspicious circumstances regarding the alleged $15,000 certificate. The certificate would have been the eighth certificate. Evidence was produced that the owner had paid on account of this certificate $6,000 and $1,000 in advance. The architect's records also showed that on this date a certificate of $15,000 was given. This the defendant contended was upon another contract in which the same architect was employed. In view of this testimony we think that it was proper for the trial court to have submitted to the jury the question for their decisions as to whether or not the evidence established either the giving of the certificate for

$15,000, in which event there would have been sufficient to have paid the plaintiff, or that the defendant unreasonably withheld the certificate, the result of which, so far as the plaintiff is concerned, would have been the same. This was a jury question under the case of *Brannworth* v. *Verona*, 94 *N. J. L.* 194.

If it be assumed that the eighth certificate was only for $2,500, as the defendant contended, this, together with the balance due upon other certificates previously issued, would have left a balance due to Jardin & Company of $8,800. Whether or not the defendant was entitled to reduce this amount by the $5,000 paid by note to the Franklin Lumber Company, and the $6,236.35 for wages of laborers, presented also questions for the decision of the jury. The plaintiff contended that the $5,000 payment to the Franklin Lumber Company was not warranted; that it was conclusively shown that $5,000 worth of materials for use in the defendant's building had not been furnished by the Franklin Lumber Company; that Jardin & Company, under its contract with the defendant, was required to supply all necessary scaffolding, moulds, &c., at its expense, and that the lumber furnished by the Franklin Lumber Company was for the purpose of scaffolding and concrete moulds which the contractor had agreed to furnish. A further question on this branch of the case was presented as to whether the notice applied to the contract of the Center Amusement Company. An examination of the stop-notice reveals that it was addressed to Bratter and Pollock. The evidence showed that Bratter and Pollock were two officers of the defendant company who were erecting another theatre at South Orange avenue and Bloomfield avenue, for which Jardin & Company had the contract. The delivery slips offered in evidence showed that some of the lumber had been delivered to another building being erected by Jardin & Company at Central avenue and Sherman Place, Jersey City. There was therefore evidence that the stop-notice of the Franklin Lumber Company claimed a larger amount than the actual value of the labor or materials furnished to the Newark theatre building. It is fatal to a claim-

ant to demand anything beyond the amount of the actual value of the labor or materials furnished to a building. *Reeve* v. *Elmendorf*, 38 *N. J. L.* 125. The situation with reference to the labor claims also gave rise to the question as to whether the Center Amusement Company were legally justified in deducting the amount of $6,236.35. This sum included amounts demanded by the laborers who had been working on the building for Jardin & Company for time which they had lost while waiting between the date of the suspension of the work by Jardin & Company and the taking of the building over for completion by the owner. Under union rules this time, called "waiting time," was required to be paid or otherwise the mechanics would not continue to work upon the building for the owner. The amount claimed, therefore, included payments for which no labor had been performed. The full amount demanded, including the so-called "waiting time," was paid. The defendant considered it politic to pay it to avoid labor troubles in completing the building. This, in effect, made the notice for a larger sum than that which was actually due for labor performed. This state of the evidence made the question as to whether or not the owner was entitled to pay the amounts of the stop-notices, one for the decision of the jury.

The first point made by the defendant is that the trial judge should have granted the defendant's motion for a non-suit. From the review of the evidence which we have made we are satisfied that this motion was properly refused. The evidence warranted the submission to the jury for their decision of the questions involved and which have been referred to. This equally applies to the point made by the defendant that the trial judge should have directed a verdict for the defendant. We think the verdict is not against the weight of the evidence, and is fully supported by the evidence.

The last point made by the defendant is that the verdict is excessive. The verdict is for the amount of the plaintiff's claim, with interest. Upon certain branches of the case, if the testimony of the plaintiff's witnesses was believed by the jury, as it evidently was, there were sufficient funds in the

hands of the owner to which the contractor was entitled for the jury to award to the plaintiff the verdict they did.

The rule to show cause is discharged.